# Supreme Court of the Navajo Nation

**Leon Secatero, et al., Appellants,**
**v.**
**Navajo Board of Election Supervisors, Appellee.**
**Decided May 6, 1991**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Casey Watchman, Esq., Crownpoint, Navajo Nation (New Mexico), for the Appellants; and Claudine B. Arthur, Office of Legislative Counsel, Window Rock, Navajo Nation (Arizona), for the Appellee.

Opinion delivered by Austin, Associate Justice.

This is an appeal by Leon Secatero, Joe Werito, and Joe D. Sandoval (appellants) from the January 24, 1991 joint summary dismissal of their Statements of Grievance (Statements) by the Navajo Board of Election Supervisors (Board). The appellants claim that because they alleged sufficient irregularities in the conduct of their recall elections, it was improper for the Board to dismiss their Statements without a hearing. They ask the Court to reverse the Board's dismissal.

## I

Appellants Secatero, Werito, and Sandoval were the president, vice president, and a land board member, respectively, of the Canoncito Chapter of the Navajo Nation. In July 1990, affidavits of intent to petition for the appellants' recall were filed with the Board. Subsequently, in August 1990, completed recall petitions were submitted to the Board, and those petitions were certified by the Board on October 11, 1990. The appellants unsuccessfully challenged that certification, first to the Board, which summarily dismissed their Statements, and then to this Court, which dismissed their combined appeal as untimely.

A recall election was held on November 20, 1990, in tandem with the special election for Navajo Nation president. The Canoncito electorate voted to recall all three appellants, who then challenged the recall election before the Board. On December 13, 1990, the Board held a hearing on the appellants' Statements and decided not to certify the results of the November 20, 1990 election because the pictures of the appellants were not included on the ballot, as required by the Election Code, 11 N.T.C. § 5(A). The Board scheduled a second recall election on January 8, 1991. That election was held without further protest from the

appellants and the electorate again voted to put the appellants out of office.

The appellants filed the Statements which are the basis for this appeal on January 18, 1991. Those Statements complained that, with the authorization of Navajo Election Administration (NEA) staff members, Canoncito residents who favored the recall of appellants altered "Official Sample Ballots" by adding false, misleading, or unproven allegations about the appellants and then photocopied the altered sample ballots and distributed them throughout the area just days before the second recall election. The appellants claimed that the Board failed in its educational and supervisory functions, and thus violated the Election Code.[1]

Additionally, the appellants alleged that their rights under the Indian Civil Rights Act, 25 U.S.C. § 1302 (1968), and the Navajo Nation Bill of Rights, 1 N.T.C. §§ 1-9 (1986), were violated, because the Board allowed ballots that were purported to be official to be disseminated with false, misleading, and unproven statements on them. These violations — of the Election Code and of the appellants' civil rights — resulted in an unfair election, the appellants alleged.

The Board reviewed the appellants' Statements en masse at its January 24, 1991 meeting. After Secatero's Statement was read in full, the Board was told that the other two Statements were essentially identical and they were accepted as exhibits. Board Meeting Transcript at 12-20 (January 24, 1991). Board Chairman, Paul Redhouse, then advised that:

> [T]he basic contention and question is the people reproducing official infor-mitory [sic] cards, pamphlets, leaflets, fliers, giving information of forth-coming election, can that such material be — shall certification of an election after such has happened be not certified because of public defacing or mis-using those literatures and also the question in allowing election staff giving the green light to reproduce them — seem to be basically the contention.

Transcript at 20. Immediately thereafter, upon the motion of Board member Edison Wauneka, the Board went into executive session in order that the Board might be "update[d] ... on certain information that we have." *Id.*

An unspecified amount of time later, the Board resumed its open session and voted unanimously to dismiss appellants' Statements without further proceed-ings. Two members of the Board explained the Board's decision to dismiss. Stanley Milford commented that "the Board itself and the staff doesn't have the money or the capacity to guard every little poster in public places...." *Id.* Board member Robert Salabye expanded on the explanation, saying that:

> [I]n our inquiries to the grievance we talked to the staff about authorization of copying sample ballots, it was authorized by Acting Director Bessie and that person requesting such copying was all in concert that all the copying was to facilitate and to promote the voter turnout . . . and that when such authoriza-tions were given that the ballot, the sample ballot was unmarked and that they were posted in the public unmarked in any way whatsoever. That's the posi-

---

1. Specifically, the appellants alleged violation of 11 N.T.C. § 321(A)(3), (6), (7), (9), (14), (18), (19), (21), and (22).

> tion that this Board is also taking that these sample ballots were posted for public's use, unmarked in any way whatsoever ... that the Board does not support defacing ballots and that this Board didn't authorize any defacing of ballots and that this Board didn't support any additional use of the ballots....

*Id.*

Written confirmation of the Board's decision to dismiss was sent to the appellants on January 25, 1991, telling them that their complaints (Statements of Grievance) had been "determined to be insufficient under the Election Code." Letters to the appellants from Wauneka (January 25, 1991).

The appellants filed a timely joint appeal from the Board's summary dismissal.

## II

The appellants raised a myriad of issues and sub-issues in their Statements. Likewise, their brief to this Court contains many related and unrelated complaints. However, the only issue this Court must decide is whether the Board abused its discretion when it summarily dismissed the appellants' Statements of Grievance.

## III

Review of the Board's decision in this case is limited: This Court has authority only to determine whether that decision was supported by "sufficient evidence on the record." 11 N.T.C. § 321(B)(4) (1990). This Court, then, cannot determine whether the various claims of the appellants are supported by the facts; nor can it decide whether the recall election was irregular and should be invalidated, as the appellants request. Rather, the sole question before this Court is whether the Board properly determined that the appellants' Statements of Grievance, on their faces, were insufficient for further proceedings.

At the outset we address the seeming disparity between the directory and mandatory nature of Election Code provisions following an election. In *Johnson v. June*, 4 Nav. R. 79 [1983], the Court of Appeals held that "[a]fter an election, election provisions are to be seen as directions unless the violations obstructed a free and intelligent vote, affected an essential element of a valid election or an omission of a direction voids the election." 4 Nav. R. at 82. However, in *Mustach v. Navajo Board of Election Supervisors*, 5 Nav. R. 115 (1987), despite the fact that this Court was reviewing a Board's dismissal of a Statement of Grievance filed after an election, this Court ruled that "[t]he procedures established for resolution of election contests and disputes were not intended to be discretionary with the Board. The Tribal Council, for reasons of due process and speeding resolutions of election contests and disputes, intended that these procedures be followed." 5 Nav. R. at 118.

Together these cases propose that while Election Code provisions having to do with the certification of candidates and other procedures leading up to and

through the election are to be considered directory in post-election review, the review procedures set forth at Section 321B(1)-(4) are mandatory. This conclusion retains the protectiveness of the will of the people (expressed through their vote) expounded in *June* and reaffirms the finding in *Mustach* that the obligation to conduct all governmental proceedings with fundamental fairness makes the procedures delineated in 11 N.T.C. § 321(B) (l)-(4) necessarily mandatory.

The Board claims to have been operating under the mandates of 11 N.T.C. § 321(B)(1) when it summarily dismissed appellants' Statements. Thus, this Court must consider just what that section of the Election Code requires of the Board when it directs as follows:

> Within ten days of the incident complained of or the election, the complaining person must file with the Board a written complaint setting forth the reasons why he believes the Election Code has not been complied with. If, on its face, the complaint is insufficient under the Election Code, the complaint shall be dismissed by the Board of Election Supervisors.

This Court has previously discussed just what must be alleged by a grievant on the Statement in order to overcome the preliminary hurdle imposed by the "sufficiency" language of 11 N.T.C. § 321(B)(1). In *Williams v. Navajo Election Comm'n.*, 5 Nav. R. 25, 28 (1985), the Court of Appeals said as follows:

> The Commission determines whether the Statement of Grievance sufficiently states a violation of the election law. This means that the grievance must specify what election law was violated. It must also contain sufficient facts that if proven to be true would indeed constitute a violation of the law. Further, under *Johnson*, these facts must tend to rebut the presumption that the election was fair and show that but for the violation of the election law the result would have been different.

However, the explanation of "sufficiency" in *Williams*, revealing though it is, does not answer the question of what constitutes a sufficient Statement.

This Court set forth some attributes of a sufficient Statement in *Brown v. Navajo Board of Election Supervisors*, 5 Nav. R. 139 (1987).

> A Statement [of Grievance] will be sufficient on its face if it specifies which election law was violated, and if it contains enough facts to raise the issue that the election results were not regular and proper. These facts, as they appear in the Statement, must support the allegation that an election law was violated. Finally, the Statement taken as a whole, which shall include all attached documents, must raise a possibility that the election results will be impeached. (citations omitted).

5 Nav. R. at 140.

At this point, it may be helpful to note the similarities between the "sufficiency" requirements of 11 N.T.C. § 321(B)(1) and those to be considered by a court when approached with a motion to dismiss. A motion to dismiss is made on the

grounds that the plaintiff has failed to state a claim upon which relief can be granted. *See* Navajo Rules of Civil Procedure 12(a). For the purposes of determining whether a motion to dismiss should be granted, "all well-pleaded facts in the complaint are considered to be true." *Curtis v. Navajo Nation Bar Assoc.*, 3 Nav. R. 178 (Window Rock Dist. Ct., 1981). A motion to dismiss will be granted where, even assuming that the plaintiff's allegations comprise the true and total picture of the situation, the plaintiff has failed to state a claim for which the court has power to prescribe a remedy.

The requirements of 11 N.T.C. § 321(B)(1) are quite similar and require a similar review by the Board. The words "on its face" indicate that the preliminary review for sufficiency must be confined to the allegations made by a grievant on the Statement. If the Board is unable, upon such a review, to determine that those allegations necessarily fall short of providing a basis for relief, a summary dismissal of the Statement is inappropriate. That is, if the Board must look to evidence beyond what is proffered by a grievant on the Statement to determine that his or her Statement is insufficient, it clearly does not meet the criteria for dismissal as being a Statement "insufficient on its face."

Here, the Board, in its brief to this Court, contends that it considered only the evidence submitted by the appellants — their grievances, their affidavits, and their supporting documentary evidence. This contention, however, is repudiated by the minutes of the meeting at which the Board voted to dismiss the appellants' Statements.

Immediately after the Board heard the reading of Secatero's Statement, it voted to adjourn to an executive session in order to be "updated" on some information relevant to the appellants' Statements. Transcript at 20. Some time later, the Board reconvened in open session and immediately voted to dismiss the appellants' Statements. Transcript at 21. Of utmost significance is Board member Salabye's admission that the Board had "talked to the (NEA) staff" about the grievances and that the information the Board had gleaned from the staff was the basis for the Board's determination that the Statements merited no further consideration. *Id.*

That Salabye did not specify when the Board spoke with the NEA staff members, whether during the Board's executive session or at some other time prior to the meeting, is of no consequence to the question before this Court. The record before this Court unequivocally attests to the fact that the Board felt compelled to explore beyond the "faces" of the Statements before it in order to find those Statements insufficient.

The facts of this case are much like those in *Mustach*. There, the Board ordered an investigation into the allegations of the grievant before deciding to dismiss the Statement, and then used the results of that investigation to declare the Statement insufficient. This Court reminded the Board that under the Election Code then in force, an investigation was proper only if, after a hearing, the veracity of the allegations was still unclear.

Here, although the process utilized by the Board before it decided to dismiss appellants' Statements was considerably shorter than that pursued by the Board in *Mustach*, the sequence of events was identical and even more improper. Not only is there no authorization in the Election Code for an investigation before a hearing on a grievance, but the 1990 amendments to the Election Code eliminated the authorization for an independent investigation at any point in the grievance review process.

The Board here, after reading the appellants' Statements had two, and only two, choices open to it: To dismiss for insufficiency "on the faces" of the Statements or to schedule a hearing on the allegations. The Board did neither. Instead, it chose to proceed with its own investigation, an investigation that, regardless of its duration, was a violation of the Election Code.

The inescapable conclusion, then, is that the Board did not determine that the appellants' Statements, on their faces, were devoid of the factors set forth in *Brown*, 5 Nav. R. at 140, or were incapable of supporting a claim for relief from the Board. Rather, in violation of the Election Code, it solicited extrinsic evidence on the issues raised by the Statements before finding them insufficient. Thus, the Statements were not insufficient "on their faces," and the Board improperly disposed of them by summary dismissal.

The matter is remanded to the Board for a hearing on the allegations.